UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

RYAN MAUNES MAGLANA, *on his own behalf and as a class representative of all other similarly situated Filipino crewmembers trapped aboard* CELEBRITY *cruise vessels*,

     Plaintiffs,

v

CELEBRITY CRUISES INC.,

     Defendant.

_____/

## CLASS ACTION & DEMAND FOR JURY TRIAL

## VERIFIED[1] COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF & DAMAGES

Plaintiff, RYAN MAUNES MAGLANA, on his own behalf and on behalf of all other similarly situated Filipino crewmembers trapped onboard CELEBRITY cruise vessels (hereinafter "PLAINTIFFS") through undersigned counsel hereby sue Defendant, CELEBRITY CRUISES INC. (hereinafter "CELEBRITY"), and allege:

### JURISDICTION AND PARTIES

1.    This case arises out of Defendant's systemic, companywide discriminatory treatment of its Filipino employees in violation of federal and applicable state civil rights

---

[1] Plaintiff is waiting for the executed verification page but has not received it at the time this document was filed with the Court due to Plaintiff's presence on Defendant's ship. It is anticipated that it will be received before the nd of the day and will be filed immediately upon receipt.

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

laws, including but not limited to under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* prohibiting discrimination on the basis of national origin in employment. However, at the time this submission was filed with the Court, Plaintiffs have submitted charges to the EEOC, but have not yet received the "Right to Sue" Notice from the Equal Employment Opportunity Commission (hereinafter "EEOC") due to the agency's decision to suspend the issuance of notices indefinitely due to the Coronavirus pandemic. Plaintiffs concede that this may render Defendant's discriminatory conduct not ripe for adjudication for the time being but respectfully submit to the Court that the interests of justice demand a remedy for individuals who are suffering discrimination and the exigent circumstances involved in this crisis provide ample support for the Court to enter relief in their favor.

2.      Plaintiff, RYAN MAUNES MAGLANA, is a citizen of the Philippines and employee of Defendant on its vessel the *Millennium*. Plaintiff MAGLANA was an employee of Defendant CELEBRITY for over 14 years and during his most recent contract of employment with Defendant was employed as a Beverage Controller onboard the *Millennium*.

3.      Defendant, CELEBRITY CRUISES INC., is a foreign entity which conducts its business from its principal place of business in Miami, Florida.

4.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* prohibiting discrimination in employment on the basis of national origin.

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

5.      In the alternative, Plaintiffs allege that this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1333 under the Court's admiralty jurisdiction.

6.      The causes of action asserted in this Complaint arise under the General Maritime Law of the United States and/or the Jones Act 46 U.S.C. Section 30104 and 46 U.S.C. Section 10313. The claims exceed the jurisdictional amount of this court, exclusive of interest and costs. This controversy is a class action brought under Federal Rule of Civil Procedure 23 and pursuant to 28 U.S.C § 1332(d)(2) in addition to Federal Rule of Civil Procedure 65.

7.      Defendant, CELEBRITY, at all times material, personally or through an agent:

   a.   Operated, conducted, engaged in or carried out a business venture in this state and/or county and/or had an office or agency in this state and/or county;

   b.   Was engaged in substantial business activity within this state;

   c.   Operated vessels in the waters of this state;

   d.   Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193; and/or

   e.   The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

8.      Defendant is subject to the jurisdiction of the Courts of this state.

9.      At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled a fleet of cruise ships, including the cruise vessel *Celebrity*

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

*Millennium* where Plaintiff MAGLANA is currently held captive in addition to and thirteen (13) sister cruise ships and expedition ships in its worldwide fleet, including in no specific order, the: *Silhouette, Apex, Solstice, Summit, Eclipse, Equinox, Edge, Infinity, Reflection, Constellation, Flor[2], Expedition[3], and Exploration[4].*

10.    At all times material hereto, Defendant operated the vessels in navigable waters.

11.    At all times material hereto, the *Celebrity Millennium* and *Eclipse* were docked at the port in San Diego, California, and subject to the jurisdiction of the US federal courts, but at all times material, the vessel was operational and capable of navigation.

12.    At all times material hereto, Defendant's base of operations and corporate headquarters are located in Miami, Florida.

13.    At all times material hereto, Plaintiffs were "seamen" aboard their respective vessel to which they were assigned by Defendant to work, as the term "seamen" is defined under U.S. General Maritime Law and/or the Jones Act, 46 U.S.C. § 30104.

14.    "Seamen from the start were wards of admiralty." *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971) (*citing Robertson* v. *Baldwin*, 165 U.S. 275, 287 (1897)). In 1823, Justice Story declared: "Every Court should watch with jealousy an encroachment

---

[2, 2,3] These ships are smaller "expedition" class ships which Celebrity uses for voyages to ecologic sanctuaries such as the Galapagos Islands.

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

upon the rights of a seaman, because they are unprotected and need counsel; because they are thoughtless and require indulgence; because they are credulous and complying; and are easily overreached. But Courts of maritime law have been in the constant habit of extending towards them a peculiar, protecting favor and guardianship. They are emphatically the wards of the admiralty." *Harden v. Gordon*, 11 Fed. Cas. 480 (No. 6047) (C.C. Me 1823). "From the earliest times maritime nations have recognized that unique hazards, emphasized by unusual tenure and control, attend the work of seafarer." *See Aguilar v. Standard Oil Co. of New Jersey*, 318 U.S. 724, 727 (1943). The *Aguilar* Court further held: "the restrictions which accompany living aboard ship for long periods at a time combine with the constant shuttling between unfamiliar ports to deprive the seaman of the comforts and opportunities for leisure, essential for living and working that accompany most land occupations." *Id*. at 728.

15.     In *Chandris, Inc. v. Latsis*, the U.S. Supreme Court reaffirmed the longstanding principle that seafarers are wards of Admiralty Courts, given the "feature of the maritime law that compensate[es] or offset[s] the special hazards and disadvantages to which they who go down to sea in ships are subjected." 515 U.S. 347, 355 (1995). The Fifth Circuit Court of Appeals explained the rationale for affording seafarers special protections in *Castillo v. Spiliada Maritime Corp.,*: "[Seafarers] enjoy this status because they occupy a unique position. **A seaman isolated on a ship on the high seas is often vulnerable to the exploitation of his employer. Moreover, there exists a great inequality in bargaining position between large ship-owners and unsophisticated seafarer**. Shipowners generally control the availability and terms of employment." 937 F.2d 240, 243 (5th Cir. 1991) (emphasis added).

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

16.    Accordingly, the Admiralty Courts have a rich tradition of protecting seafarers, which flows from the uniquely abhorrent conditions seafarers face at sea. And it is not just the Courts which recognize the need to protect seafarers, as "[t]he policy of Congress, as evidenced by its' legislation, has been to deal with [seafarers] as a favored class." *Bainbridge v. Merchants' & Miners' Transp. Co.,* 287 U.S. 278 (1932).

17.    Plaintiffs including class representative MAGLANA and his fellow Filipino class members worked for Defendant aboard Defendant's vessels, were employees of Defendant until it unilaterally terminated their contracts at various points in time since the CDC's March 14th no-sail Order and stopped paying agreed upon wages shortly thereafter.

<u>ALLEGATIONS COMMON TO ALL COUNTS</u>
<u>PERTAINING TO DEFENDANT'S TORTIOUS CONDUCT WHICH VIOLATES U.S.</u>
<u>GENERAL MARITIME LAW, THE JONES ACT AND THE CIVIL RIGHTS ACTS OF 1964 & 1961</u>

18.    The basis of the class action stems from Defendant CELEBRITY's callous and inhumane business decision to keep crew members from specific countries trapped on board its passenger-less ships with no wages and no hopes of going home to family members in need, including infants, children, and elderly parents.

19.    Despite having actual knowledge that the CDC had issued a no sail order as early as March 14, 2020 and the supplemental orders issued thereafter have prohibited cruise ships from operating in US waters through at least midsummer, a date which remains at risk to be delayed even further.

20.    In fact, the *Millennium* where Plaintiff MAGLANA is currently being held captive has been without passengers since February 10th, 2020, nearly 100 days ago.

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
www.CruiseLawyerMiami.com

Maglana V. Celebrity Cruise Inc.
Case No.:

21.     At that time, only Vietnam and Singapore would agree to allow the ship to
dock at their respective ports after rejections at Hong Kong and Thailand. The ship stayed
in Singapore after disembarking its last passengers on February 10th until February 14th,
when the vessel departed from Singapore and sailed east to Manila, arriving in the
Philippine capital on February 19th, 2020.

22.     At the time, many of the vessel's Filipino seafarers were excited at the
prospect of returning to their home country and hopeful that they would be allowed to
return home if the company was going to cancel cruises.

23.     Unfortunately, the excitement was short lived and left just as quickly as it
came. Less than twenty-four (24) hours after arriving in Manila Bay, PLAINTIFFS
onboard the *Millennium* were cruelly taken from Manila in what felt like moments the
ship's Filipino seafarers eager to return home to their loved ones.

24.     The only crewmembers that were allowed to disembark for repatriation
were those that both had concluded their contracts and had a suitable replacement
onboard.

25.     CELEBRITY, apparently oblivious to the media frenzy that was beginning
across the globe which had begun to focus on the cruise lines collective role in facilitating
the virus's spread, and the ancillary fact that ships in its fleet, *Millennium* included, had
already been passenger-less for close to 10 days.

26.     The ship's remaining Filipino crew were prevented from disembarking the
ship despite the obvious writing on the wall that the cruise lines would not be sailing
with passengers for the foreseeable future.

Delgado Trial Attorneys ✦ 10661 N. Kendall Drive, Suite 210 ✦ Miami, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ Toll Free (877) 372-0817 ✦ Fax (305) 397-2654
www.CruiseLawyerMiami.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

27.      Despite the pleas of crewmembers on board to be allowed to disembark in their home port of Manila, Celebrity elected to refuel the *Millennium* and continue eastward to the western U.S. seaboard after a stop in Honolulu. The stop in Honolulu on March 1st came and went but the company was still reluctant to make a final decision to repatriate its crew, so the vessel sailed on eastward. Finally, the ship arrived in Ensenada, Baja California in Mexico on March 11, 2020.

28.      In the interim, on March 13th, 2020, Royal Caribbean, CELEBRITY's parent company, suspended all of its future cruises, including those associated with its subsidiary companies, such as CELEBRITY. The following day, on or about March 14, 2020, the CDC issued its first No Sail Order.

29.      Thus, without any doubt whatsoever, Defendant CELEBRITY knew that passenger cruises in the U.S. would be canceled until the C.D.C.'s No Sail Order is lifted, eventually.

30.      Nonetheless, after 64 days since the C.D.C. issued the first no-sail order back on March 14th, the *Millennium* holds nearly 1000 Filipino crew members on board. Upon information and belief, there are at least 1700 Filipino seafarers being held captive throughout CELEBRITY's fleet, and nearly 7,000 between those employed by Royal Caribbean Cruise Line, Azamara Cruise Line, Celebrity Cruise Line, and the other minor subsidiary brands owned by the Royal Caribbean/Celebrity holding entity.

31.      The ship departed Ensenada 8 days later on March 19, 2020. Before leaving Ensenada, some crewmembers were allowed to disembark and sign-off. Many of the

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
www.CRUISELAWYERMIAMI.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

Filipino seafarers sought leave to sign off the ship at that point, but were denied permission due to the "lack of a replacement."

32.     The ship finally arrived at San Diego on March 20, 2020, which is also where it is currently located and his been at all times material other than a brief trip for provisions in late March.

33.     Upon information and belief, will remain there until the CDC rescinds its no-sail order as the vessel is scheduled to sail on Alaskan and Pacific Northwest itineraries in the second half of 2020.

34.     Defendant's failure to repatriate its Filipino seafarers unfortunately is not the extent of its unscrupulous conduct. In addition to holding its crewmembers hostage, against their will, and with little or no payment of wages, the Defendant has engaged in a campaign of disinformation and deception in an effort to avoid mutiny or rebellion on board.

35.     Plaintiff MAGLANA has been held without wages since his contract was terminated by Defendant on March 30th, nearly 7 weeks ago. He was advised when he was terminated that he would be repatriated on April 1, 2020, in accordance with the terms of the Collective Bargaining Agreement (hereinafter "CBA"), negotiated between Defendant and a "union" which it established in Italy for the purposes of claiming that the CBA was collectively bargained for.

36.     Nonetheless, even though it would be bound by a contract and CBA which is the product of its own collective-bargaining with an "adversarial" union led by an agent which it appointed and requires its crew members to join, Defendant still ignored

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
www.CRUISELAWYERMIAMI.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

the requirement to repatriate crew within 24 hours of their contract being terminated or voided as expressly required by their "collectively bargained" agreement, which merely recites the requirements espoused in the Maritime Labor Convention of 2006.

37.     Plaintiff MAGLANA was told his April 2st flight had been rescheduled to April 8h, then the 16th, and 26th, 28th, and the 11th/12th May tentatively, so on and so forth. Not surprisingly, these too were all canceled.

38.     But why would the cruise lines, and specifically Defendant delay repatriation of its crew? The answer, as is usually the case with the cruise industry, comes down to dollars and cents: profits are far more important than a replaceable crewmember and if someone doesn't like it, there's an eager replacement that will gladly accept an offer to work on a ship that would pay them over $1200 a month for 75 hours of work per work week as an average for 6-9 months.

39.     As has been the case since at least April 23rd, the CDC has not only allowed cruise line crew repatriations from seaports in the U.S., they have provided the cruise lines with a detailed protocol of how to do it to avoid and legal consequences:

> **CDC is allowing crew members to disembark from cruise ships in U.S. waters and return home if cruise lines submit a signed attestation stating that they have complied with requirements to safely disembark their crew members...** CDC shared information with all cruise lines in US waters on April 23, 2020, to help crew members return home safely. [5]

40.     The CDC's position on repatriation was public knowledge shortly after the

---

[5] CDC Guidelines for Disembarkation of Crew published on April 23, 2020. https://www.cdc.gov/coronavirus/2019-ncov/travelers/cruise-ship/cruise-ship-member-disembarkations.html

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

Maglana V. Celebrity Cruise Inc.
Case No.:

agency published the conditions on its website and providing them to national media. As was the basis for the cruise lines' decision to delay repatriation as long as possible because of the associated costs to repatriate their replaceable crew members that did not fall in line with the company's take it or leave it offer.

41.     Knowing the consequences that would arise due to its unjustified wholesale breach of the CBA which it created, rather than admit the error of its ways, CELEBRITY through its corporate directors and its parent corporation which owns it the CELEBRITY subsidiary outright, elected to concoct a narrative that claimed that the repatriations were being prevented by the CDC as if they actually believed the rouse would work.

42.     Whether because it was oblivious or intentionally deceiving its crew, the fabricated narrative was soon exposed when the CDC revealed that ships in the US or within its territorial waters had been given the green-light to repatriate the crewmembers in their fleets so long as Defendant agreed to abide by precautionary compliance measures that were non-negotiable due to the history of the cruise lines in making big promises with little to show for it.

43.     As recently as May 1st, there were reports of ship captains in the fleet RCL Ltd Fleet, including its subsidiary brands such as but not limited to Celebrity.

44.     On board ships in the Royal Caribbean fleet, within the same cruise conglomerate, audio records capture the corporate deception straight from the mouth of their vessel masters, including onboard  the *Oasis*, *Anthem* and *Symphony of the Seas*. After local media published a story which revealed the extent of the rouse, ship captains shamelessly denied the stories and instead, continued to fabricate tall tales.

Delgado Trial Attorneys ✦ 10661 N. Kendall Drive, Suite 210 ✦ Miami, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ Toll Free (877) 372-0817 ✦ Fax (305) 397-2654
www.CruiseLawyerMiami.com

Maglana V. Celebrity Cruise Inc.
Case No.:

45.    In fact, according to the Master of the *Oasis of the Seas* "'[i]n regards to what was in the Miami Herald the other day [about economics being the cause of the delay, not the CDC], well, that is one of those things that is not true at all,' said the captain [ ] in an announcement Friday." Similarly, according to the Master of the *Symphony of the Seas* "'[f]irst of all, I'd like to just address the Miami Herald article that came out yesterday," said the captain on the Symphony of the Seas. He joked that the only way to comply with the CDC guidelines is for American crew to walk home, citing a requirement that crew not interact with the public on their journey home.'"

46.    Most damning of all though, was the commentary of the Master of the *Anthem of the Seas* who shamelessly lied to the crew and stated:

> 'There was one article today *we* all read and we raised that question today in a conference call which says that CDC and cruise lines did not come with an agreement because it's too expensive,' said the captain on the Anthem of the Seas Friday. 'That is absolute false. The money has nothing to do with it. It is absolutely not the money that we are concerned. The money is not the issue.'"[6]

47.    In reality though, subsequent statements of the company's corporate officers show beyond a doubt that the company was intentionally lying to crew. Days after the May 1st report of the Masters' fabrications and misrepresentations, RCCL CEO went on record and stated "he hopes the threat of criminal prosecution will be removed.

---

[6] Miami Herald article "Royal Caribbean false blames CDC for keeping crew trapped on its ships, agency says" dated May 1, 2020
https://www.miamiherald.com/news/business/tourism-cruises/article242443236.html

Delgado Trial Attorneys ✦ 10661 N. Kendall Drive, Suite 210 ✦ Miami, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ Toll Free (877) 372-0817 ✦ Fax (305) 397-2654
www.CruiseLawyerMiami.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

. . 'we have decided that the importance of getting [crew] home is so great that we will sign these documents as they are written today to help get you off the ships.'"[7]

48.    Since those May 3rd promises were memorialized in print, over two weeks have come and gone, yet thousands of crew members remain captive on board the ships they previously served on, with no wages, and growing more desperate by the day.



49.    There have been hunger strikes on the *Navigator of the Seas* "[a]t this moment, we feel that we're all hostages,' said one crew member, who asked not to be named for fear the company will retaliate and delay repatriation. 'This company needs to understand we are not boxes of food that can be moved around.'"; heart wrenching

---

[7] Miami Herald article " Royal Caribbean executives agree to the CDC's terms for disembarking crew stuck on ships" dated May 3, 2020 https://www.miamiherald.com/news/business/tourism-cruises/article242471226.html

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

cries for help and multiple suicides. [8]

50.     Without a doubt, we are witnessing a human rights tragedy of immense proportions unfold before our very eyes. But unlike in the past, Defendant CELEBRITY and its colleagues in the cruise ship cartel cannot hide behind the lawless open oceans where many of their misdeeds are typically swept away with the current.

51.     This time tough, CELEBRITY's unscrupulous, discriminatory and illegal actions  are not transpiring on the open ocean thousands of leagues from  the nearest point of land. This time, the world is watching, the nation is watching, and a failure to act and fight for what is right will not go unnoticed. **We are all witnesses.**

### CLASS ACTION ALLEGATIONS

32.     At all times material hereto, Plaintiffs, the Class Representative and Class Members herein, are and/or were crewmembers who worked for Defendant aboard Defendant's vessels and who are Filipino nationals.

33.     This action is brought by Plaintiff MAGLANA on his own behalf, and pursuant to Fed. R. Civ. P. 23(b)(1-3) he seeks to represent a worldwide class consisting of:

> All other similarly situated Filipino crewmembers who worked aboard Defendant's cruise vessels who remain captive aboard vessels in Defendant's fleet, and are being  subjected to the dangerous conditions outlined above in connection with Defendant's callous and unreasonable failure to repatriate its crewmembers upon its unilateral decision to terminate their contracts and entitlement to wages.

---

[8]Miami Herald article " Royal Caribbean crew go on hunger strike until company proves it is sending them home" dated May 8, 2020
  https://www.miamiherald.com/news/business/tourism-cruises/article242595896.html

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

34.     Plaintiff reserves the right to seek to represent sub-classes of the world-wide

class.

36.     *Numerosity*-- The exact number of members of the class is unknown at this

time given that many members are currently in voluntary or forced isolation aboard

Defendant's vessels; however, at this time it is estimated that there are in excess of over

1700 members. The class is so numerous that joinder would be impracticable. Thus, this

action satisfies the requirements of Rule 23(a)(1).

37.     *Commonality* — There are common questions of law and fact that relate to

and effect the rights of each member of the class and the relief sought is common to the

entire class. The same misconduct on the part of Defendant, CELEBRTIY, caused the same

or similar injury to each class member. All class members seek damages and equitable

relief in the form of a mandatory injunction as described in ¶¶ 1, 4, and 6 above and

accordingly, this action satisfies the requirement of Rule 23(a)(2).

38.     *Typicality*-- The claims of Plaintiffs are typical of the claims of the class, in

that the claims of all members of the class, including the named Plaintiff, depend upon a

virtually identical showing of the acts and omissions of Defendant, CELEBRITY, giving

rise to the right of Plaintiff to the relief sought herein. Defendant, CELEBRITY, was at all

times material hereto engaged in the same conduct to the detriment of the entire class of

Plaintiffs. Accordingly, this action satisfies the requirements of Rule 23(a)(3).

40.     *Adequacy of Representation* — Plaintiff is the representative party for the class,

and is able to, and will, fairly and adequately protect the interests of the class. Plaintiff

MAGLANA is an adequate representative of the class because: (1) he is willing and able

Maglana V. Celebrity Cruise Inc.
Case No.:

to represent the proposed class and has every incentive to pursue this action to a successful conclusion; (2) his interests are not in any way antagonistic to those of the other class members; and (3) is represented by counsel experienced in litigating claims under the General Maritime Law of the United States in addition to the statutory modifications and amendments enacted by Congress. Accordingly, this action satisfies the requirement of Rule 23(a)(4).

41.    *Propriety of Maintenance of Class Action under Fed. R. Civ. P. 23(b)(1).* Class action status is appropriate under Fed. R. Civ. P. 23(b)(1) because in light of the number of Filipino employees that are currently being held against their will by Defendant, adjudication of Plaintiff MAGLANA's prayer for a mandatory injunction would be dispositive of the their legal right to be repatriated in accordance with U.S. and International maritime law.

42.    *Propriety of Maintenance of Class Action under Fed. R. Civ. P. 23(b)(2).* Class action status is appropriate under Fed. R. Civ. P. 23(b)(2) because CELEBRITY has acted and/or refused to act on grounds generally applicable to the class, thereby making final injunctive relief appropriate. Such generally applicable grounds consist of the repatriation of its shipboard employees to their country of residence, the Philippines, in accordance with U.S. and International Maritime law.  **This relief would predominate over monetary relief.**

14.    *Propriety of Maintenance of Class Action under Fed. R. Civ. P. 23(b)(3).* This action is properly maintained as a class action under Rule 23(b)(3) inasmuch as questions of law and fact common to the members of the class predominate over any

Delgado Trial Attorneys ✦ 10661 N. Kendall Drive, Suite 210 ✦ Miami, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ Toll Free (877) 372-0817 ✦ Fax (305) 397-2654
www.CruiseLawyerMiami.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy. In support of the foregoing, Plaintiffs allege that common issues predominate and can be determined on a class-wide basis regarding Defendant, CELEBRITY's violation of Plaintiffs rights to be repatriated after their contracts end or the ships they are in service to become unseaworthy, in view of Defendant's callous disregard for the wellbeing of its employees who are not able to disembark Defendant's ships due to the Coronavirus and their only vehicle of repatriation is by virtue of charter flights home which Defendant has determined is of greater concern than the well-being and rights of its employees.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiff is not aware of any class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with Defendant, CELEBRITY, in a single forum, and individual actions by class members, all of whom are citizens of the Philippines would be cost prohibitive. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

43.     CELEBRITY and many of the Plaintiffs herein have entered into employment contracts and/or Collective Bargaining Agreement's ("CBAs"), which call for arbitration of employment-related disputes between CELEBRITY and the respective

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

seafarers. However, no arbitration provision in any of the Plaintiffs' employment contracts and/or CBAs with CELEBRITY expressly call for arbitration of class action employment-related claims, nor contemplate claims for equitable relief and mandatory injunctions.

44.     Aggrieved parties cannot be forced to submit class action disputes to arbitration unless there is a contractual basis for concluding that the aggrieved parties agreed to do so. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684-87 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so . . . An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. . . class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.") (emphasis in original).

45.     Here, because there is no contractual provision in any written agreement between Plaintiffs and CELEBRITY to submit employment-related class action disputes involving prayers for equitable relief to arbitration. Thus, Plaintiffs' Class Action lawsuit filed in this Court is proper. *See id.*

## EXHASUTION OF ADMINSTRATIVE REMEDIES

46.     As referenced above, Plaintiffs have not received the Right to Sue notice from the EEOC at this time because the agency has issued a moratorium on them until further notice when the virus's impact on the ability to resume normal operations is better known. Plaintiff's EEOC Charge Filing No. is 510-2020-03917

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ Toll Free (877) 372-0817 ✦ Fax (305) 397-2654
www.CRUISELAWYERMIAMI.com

Maglana v. Celebrity Cruise Inc.
Case No.:

### COUNT I
### PRELIMINARY MANDATORY INJUNCTION REQUIRING REPATRIATION OF DEFENDANT'S FILIPPINO CREWMEMBERS
### [*CLASS & INDIVIDUAL CLAIM*]

47.     PLAINTIFFS restate and reallege the allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

48.     PLAINTIFFS and members of the class are employees of Defendant CELEBRITY within the meaning of 42 U.S.C. § 2000(e) *et seq.,* and Fed. R. Civ. P. 23. In the alternative, should the Court determine that PLAINTIFFS are precluded from seeking relief under Title VII, PLAINTIFFS submit that their class nonetheless satisfies the requirements of Fed. R. Civ. P. 23 regardless of Title VII as their class nonetheless comports with the prescriptions of Fed. R. Civ. P. 23(a) and (b)(1-3).

49.     CELEBRITY has adopted and/or maintained subjective employment practices, including but not limited to, subjective and disparate practices for complying with their legal obligations to repatriate employees that are not earning wages based exclusively on their national origins because, on information and belief, the larger the number of individuals from a specific national original, the higher the cost for Defendant to comply with its obligations under maritime law to repatriate its crew, and accordingly, continue to "schedule" repatriation trips on a nearly weekly basis, all of which have been "canceled" due to the fabricated narrative that the CDC is prohibiting repatriation.

50.     PLAINTIFFS will suffer irreparable harm if Defendant continues to perpetually delay its obligations under International maritime law (IMO procedures relating to the Maritime Labor Convention) and U.S. General Maritime law which the U.S. Coast Guard has determined to be consistent with U.S. General Maritime law and

Delgado Trial Attorneys ✦ 10661 N. Kendall Drive, Suite 210 ✦ Miami, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ Toll Free (877) 372-0817 ✦ Fax (305) 397-2654
www.CruiseLawyerMiami.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

requires ships flying a U.S. flag to comply with "NVIC 02-13 uses a Statement of

Voluntary Compliance (SOVC) and a Declaration of Voluntary Compliance to mirror the

MLC and the DMLC of the MLC, 2006. The U.S. Coast Guard was extremely meticulous

in following the letter of the MLC, 2006 for one principal reason: the 'no more favourable

(sic) treatment' clause contained in Article V, paragraph 7 [of the Maritime Labor

Convention of 2006]. See U.S. Coast Guard's Circular dated January 6, 2017 implementing

the MLC's Repatriation requirements for attached as Exhibit "A".

51.     Specifically, PLAINTIFFS have been, and continue to be, irreparably

harmed by CELEBRITY's failure to repatriate them which includes, but is not limited to:

a)   mental anguish and emotional distress caused by the discriminatory treatment they have suffered on the basis of their national origins;

b)   multiple suicides;

c)   inability to provide for dependents, including children and parents;

d)   continued potential exposure to the COVID-19 causing coronavirus which has infected well over five million people across the world and killed over 300 thousand; and

e)   inability to earn wages from an alternative source of employment in light of CELEBRITY's decision to terminate their contracts.

52.     PLAINTIFFS have no adequate remedy of law that would serve to

immediately enjoin Defendants continued and unlawful violation of PLAINTIFFS' basic

human rights and their rights to earn wages or be repatriated to care for their loves ones

and dependents.

53.     PLAINTIFFS have a substantial likelihood of success on the merits on its

claims for false imprisonment and discrimination under Title VII of the U.S. Code which

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
www.CruiseLawyerMiami.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

provides for damages for emotional distress in addition to the damages that are customarily seen in actions for tort under the General Maritime law of the United States.

54.     The entry of a preliminary injunction will serve the public interest by effectuating the important policy concerns of Title VII preventing workplace discrimination on the basis of national origin, amongst others, in addition to reinforcing Defendant's apparent inability or unwillingness to comprehend that no person or corporation is above the law.

55.     PLAINTIFFS have a clear legal right to the relief sought herein.

**WHEREFORE**, PLAINTIFFS pray that:

1)     The Court maintains this matter as a class action on behalf of the proposed worldwide class, that Plaintiff be designated as representative of the class that their counsel of record be designated as Class Counsel;

2)     That the Court enter an injunction against Defendant CELEBRITY Ordering it to repatriate its Filipino seafarers that are not being paid wages and are being held against their will aboard ships in CELEBRITY's fleet;

3)     That judgement be entered in favor of Plaintiffs and the members of the class set forth herein, and against Defendant, for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiffs and the members of the class;

4)     That the Plaintiffs be awarded costs, including but not limited to, attorneys' fees, experts' fees, and other costs and expenses of this litigation, and pray for such other relief in equity which this Court deems just and proper.

5)     That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and it determined to be in full compliance with the law.

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
www.CRUISELAWYERMIAMI.com

Maglana V. Celebrity Cruise Inc.
Case No.:

## COUNT II
## INTENTIONAL TORT OF FALSE IMPRISONMENT
[*CLASS & INDIVIDUAL CLAIM*]

56.     PLAINTIFFS restate and reallege the allegations contained in paragraphs 1 through 45 above as if fully set forth herein.

57.     At all times material Defendant CELEBRITY intentionally caused the Plaintiffs to be **held captive** against their will with **no wages or ability to leave the ship** due to Defendant's election to ignore and violate their legal obligations under the laws of this country, the laws of the flag states of the various ships, and the laws of Liberia where CELEBRITY's parent corporation RCL is based.

58.     The restraint of the Filipino seafarer PLAINTIFFS as a class, and PLAINTFF MAGLANA as Class Representative and/or individual, was done against PLAINTIFFS' collective will through acts directly and in a natural and continuous sequence to produce or contribute substantially to producing the unjustified and intentional restraint of the class as a whole, so that it can be reasonably said that, but for those acts of CELEBRITY, the seemingly perpetual restraint/imprisonment would not have occurred, by confining the Plaintiffs to a perpetual confinement on its ships for reasons unknown to Plaintiffs but clearly in violation on US and International law.

59.     As a result of the Defendant CELEBRITY's false imprisonment of the Plaintiffs, they were physically and emotionally injured about their bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of plaintiffs injuries,

∘ **22** ∘

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

suffered physical handicap, lost wages and their working ability has been impaired in the future. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, plaintiff lost the benefit of plaintiffs vacation, cruise, and transportation costs.

**Wherefore**, the plaintiffs demands judgment for all damages recoverable under the law against the Defendant CELEBRITY, including compensatory damages, costs, including attorneys' fees and experts' fees, punitive damages based on the intentional nature of CELEBRITY's conduct to the maximum extent allowed under the law, and demands trial by jury, and for any other relief the Court dete4rmines reasonable and just.

### COUNT III
### EMPLOYMENT DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN
*[CLASS & INDIVIDUAL CLAIM]*

60.     PLAINTIFFS restate and reallege the allegations contained in above Paragraphs 1 through 45 of this Complaint as though set forth here in full.

61.     Plaintiff and members of the class are employees of CELEBRITY within the meaning of 42 U.S.C. § 2000(e) *et seq.*

62.     The discriminatory policies or practices of CELEBRITY, as set forth in this Complaint, have denied Plaintiffs and members of the class their right to equal employment opportunity in violation of 42 U.S.C. § 2000(e) *et seq.*

63.     CELEBRITY has adopted and/or maintained a system-wide policy or practice of discrimination by, among other things, denying Plaintiffs and members of the class equal opportunities as described above.

64.     CELEBRITY has adopted and/or maintained subjective employment

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
www.CRUISELAWYERMIAMI.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

practices, including but not limited to, subjective and disparate practices repatriating employees based exclusively on their national origin. Through the apparent use of a "cost/benefit analysis" type approach of comparing potential costs of repatriation versus keep employees on board until the no-sail orders are lift later this year, to hell with their needs.

65.     The embodiment of the "profits over people" concept implemented by CELEBRITY to intentionally withhold its employees' wages and simultaneously deprive them of their ability to return home and reunite with loved ones.

66.     Sadly, CELEBRITY determines the ability of their crew to return home and be freed from their illegal captivity is based entirely on their national origin.

67.     This is clear evidence of their belief that they can act with impunity because of the legal gymnastics they play with their principal place of business and H.Q.  in Miami, claims of Liberian citizenship, and operating vessels that fly under the flags of Liberia, Malta, Panama, and the Bahamas.

68.     By reason of CELEBRITY's discriminatory policies or practices as set forth in this Complaint, Plaintiff and members of the class have suffered damages including, but not limited to, lost income, lost benefits, embarrassment, emotional distress, physical injury, humiliation, indignity and a reduced quality of life, since the discrimination began and into the future.

**Wherefore**, the plaintiffs demand judgment for all damages recoverable under the law against the Defendant CELEBRITY, including compensatory damages, injunctive/equitable relief prayed for in Count II, their costs, including attorneys' fees

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

and experts' fees, punitive damages based on the intentional nature of CELEBRITY's conduct to the maximum extent allowed under the law, and for any other relief the Court determines reasonable and just.

## COUNT IV
## JONES ACT NEGLIGENCE
[*CLASS & INDIVIDUAL CLAIM*]

69.     Plaintiffs re-allege, incorporate by reference, and adopt paragraphs 1 through 45 above as though originally alleged herein.

70.     At all times material hereto, it was the duty of Defendant to provide Plaintiffs with a reasonably safe place to work.

71.     At all times material hereto, Defendant and/or its agents', servants', and/or employees' acts and/or omissions caused, contributed and/or played a substantial part in bringing about Plaintiffs' injuries and/or death for reasons that include, but are not limited to, the following:

    a.  Failure to use reasonable care to provide Plaintiffs with a reasonably safe place to work aboard the subject vessels to which they were assigned;

    b.  Failure to reasonably examine all individuals whom Defendant permitted to board the vessels to determine whether any of them exhibited symptoms consistent with a positive COVID-19 diagnosis, including, but not limited to, determining whether any individual permitted to board the vessels exhibited symptoms of fever, cough, and/or shortness of breath;

    c.  Failure to timely enact fleetwide vessel social distancing measures, including, but not limited to a requirement that all shipboard individuals maintain separation of at least six (6) feet;

    d.  Failure to reasonably test all individuals whom Defendant permitted to board its cruise vessels, including, but not limited to, the *Celebrity Apex* for COVID-19;

    e.  Failure to monitor the mental and physical health of the Plaintiffs throughout the time they were held captive aboard the vessel after the CDC's March 14, 2020 no-sail Order, and further, after Defendant made the

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

unilateral determination to withhold payment of wages despite their crews' inability to disembark their ships;

f.   Failure to reasonably and/or timely identify passengers and/or crewmembers who recently traveled to COVID-19 high risk/exposure locations before permitting them to board the vessels;

g.   Failure to adequately warn crewmembers before they boarded the vessels and/or anytime during cruising aboard the vessels that a passenger(s) on a prior cruise showed symptoms and/or tested positive for COVID-19; and/or

h.   Failure to sufficiently warn crewmembers working aboard the vessels of the dangers and/or risks of COVID-19 and/or other related infectious disease, including, but not limited to, failing to inform the crewmembers of the extent of the prior COVID-19 outbreaks and/or risks and/or symptoms aboard the vessels;

i.   Failure to reasonably educate crewmembers working aboard the vessels as to the explosive contagiousness of COVID-19, including but not limited to explaining to crewmembers ways they can reduce and/or eliminate their exposure to COVID-19 aboard the vessels;

j.   Failing to practice safe and sanitary food practices aboard the vessels;

k.   Failure to provide sanitary vessels upon which Plaintiffs were assigned to work so as to prevent outbreaks of COVID-19 and/or virus and/or infectious diseases, including, but not limited to, Defendant's inadequate and/or ineffective cleaning/sanitary procedures and/or lack of equipment and supplies;

r.   Failure to equip the vessels and/or provide crewmembers with a sufficient amount cleaning and/or disinfectant equipment and/or personal protective equipment; and/or

s.   Failure to man the vessel with a sufficient number of competent crewmembers responsible for cleaning and/or disinfecting the ship in view of the ongoing COVID-19 pandemic.

72.   The above acts and/or omissions caused and/or contributed to Plaintiffs to suffer mental anguish and emotional distress.

73.   At all times material hereto, Defendant knew or should have known of the that the conditions on boards its vessels described in paragraph 70 above which caused

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
www.CRUISELAWYERMIAMI.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

and/or resulted in Plaintiffs' injuries and suffering yet did nothing correct them.

74.     In the alternative, the foregoing conditions referenced in paragraph 47 existed for a sufficient length of time so that Defendant, in the exercise of reasonable care should have learned of them and corrected them.

75.     As a result of Defendant's negligence, Plaintiffs became more susceptible and/or vulnerable to other illness and/or medical conditions, including pre-existing illness and/or medical conditions, and were injured about their bodies and/or extremities. Plaintiffs also suffered physical pain and suffering, mental anguish, future physical and medical problems and/or the reasonable fear of developing future physical and medical problems. Plaintiffs also lost enjoyment of life, and suffered physical and/or functional disability, physical and/or functional impairment. Plaintiffs were also inconvenienced in the normal pursuits and pleasures of life and suffered from feelings of economic insecurity caused their mental suffering, injuries and distress. Plaintiffs also incurred medical expenses in the care and treatment of their injuries, suffered physical handicap, lost wages, income lost in the past, and their working abilities and/or earning capacities have been impaired. Plaintiffs injuries and damages are permanent or continuing in nature, and they will suffer these losses and impairments in the future.

**WHEREFORE,** PLAINTIFFS and others similarly situated demand judgment for all damages recoverable under the law against the Defendant and demand trial by jury.

DELGADO TRIAL ATTORNEYS ♦ 10661 N. KENDALL DRIVE, SUITE 210 ♦ MIAMI, FL 33176
(305) 596-7911 ♦ (305) 927-3678 ♦ TOLL FREE (877) 372-0817 ♦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

## COUNT V
## UNSEAWORTHINESS
### [CLASS & INDIVIDUAL CLAIM]

76.     Plaintiffs re-allege, incorporate by reference, and adopt paragraphs 1 through 45 above as though originally alleged herein.

77.     At all times material hereto, Defendant had an absolute and non-delegable duty to maintain the vessels on which Plaintiffs served in a seaworthy condition.

78.     At all times material hereto, Defendant's vessels were unseaworthy and such unseaworthiness were a legal cause of injury and damage to the Plaintiffs by reason that include, but are not limited to, the following:

a.  The vessels were not reasonably fit for their intended purposes;

b.  The vessels' crew was not reasonably fit for the vessels' intended purpose;

c.  The CDC's no sail order in light of the cruise industry's role in facilitating the worldwide spread of the pandemic is per-se evidence that no vessel in Defendant's fleet was in a seaworthy state due to the ubiquitous nature of the virus on board ships in Defendant's fleet;

d.  The vessels were negligently designed insofar as their inability to undertake or effectuate reasonable precautionary measures to impede or slow the spread of contagions once present on board; which resulted in all vessels in Defendants' fleet, as well as the rest of the global cruise fleet, being a catalyst for the virus's spread across the globe, and not coincidentally, exposing passengers and crew in the process;

e.  The vessels failed to have and/or enforce means to reasonably restrict individuals' access to the vessels (including, but not limited to CELEBRITY's passengers and crew that were possibly or definitively exposed to the novel coronavirus, and CELEBRITY actually or constructively knew of the dangerous conditions aboard its vessels;

f.  The vessels failed to have and/or enforce means to reasonably examine all individuals whom Defendant permitted to board the vessels to determine whether any of them exhibited symptoms consistent with a positive COVID-19 diagnosis, including, but not limited to, determining whether

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
www.CRUISELAWYERMIAMI.com

Maglana V. Celebrity Cruise Inc.
Case No.:

any individual permitted to board the vessels exhibited symptoms of fever, cough, and/or shortness of breath;

g. The vessels failed to have and/or enforce means to timely enact vessel-wide social distancing measures, including, but not limited to a requirement that all shipboard individuals maintain separation of at least six (6) feet;

f. The vessels failed to have and/or enforce means to timely quarantine those passenger and/or crewmembers whom Defendant reasonably suspected had contracted COVID-19;

g. The vessels failed to have and/or enforce means to reasonably and/or timely identify passengers and/or crewmembers who recently traveled to COVID-19 high risk/exposure locations;

h. The vessels failed to have and/or enforce means to reasonably test all individuals whom Defendant permitted to board the vessels for COVID-19 and/or those with classic COVID-19 symptoms;

i. The vessels failed to have and/or enforce means to reasonably educate crewmembers as to the explosive contagiousness of COVID-19, including but not limited to explaining to crewmembers ways they can reduce and/or eliminate their exposure to COVID-19 aboard the vessels;

j. The vessels failed to have and/or enforce adequate policies and procedures in place to manage and contain the outbreak and spread of COVID-19 and/or virus and/or infectious disease;

k. The vessels were not sanitary to the extent necessary to prevent outbreaks of COVID-19 and/or virus and/or infectious diseases, including, but not limited to, their inadequate and/or ineffective cleaning/sanitary procedures and/or lack of equipment and supplies;

l. The vessels were not equipped with a sufficient amount of cleaning and/or disinfectant equipment and/or personal protective equipment; and/or

m. The vessels were not manned with a sufficient number of competent crewmembers responsible for cleaning and/or disinfecting the ship in view of the ongoing COVID-19 pandemic.

79. The above acts and/or omissions caused and/or contributed to Plaintiffs

and others similarly situated aboard Defendants' vessels to sustain personal injuries.

Delgado Trial Attorneys ✦ 10661 N. Kendall Drive, Suite 210 ✦ Miami, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ Toll Free (877) 372-0817 ✦ Fax (305) 397-2654
www.CruiseLawyerMiami.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

80.    At all times material hereto, Defendant knew or should have known of the foregoing conditions which caused and/or resulted in Plaintiffs' injuries and/or death and did not correct them. In the alternative, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care should have learned of them and corrected them.

81.    As a result of the unseaworthiness of the vessels, Plaintiffs were injured physically, mentally and emotionally; became more susceptible and/or vulnerable to other physical injury, illness and/or medical conditions, including aggravation of pre-existing illness and/or medical conditions, and were injured about their bodies and/or extremities. Plaintiffs also suffered physical pain and suffering, mental anguish, reduced lung function and/or capacity, future physical and medical problems (including but not limited to reduced lung function and/or capacity) and/or the reasonable fear of developing future physical and medical problems. Plaintiffs also lost enjoyment of life, and suffered physical and/or functional disability, physical and/or functional impairment. Plaintiffs were also inconvenienced in the normal pursuits and pleasures of life and suffered from feelings of economic insecurity caused by disability, disfigurement. Plaintiffs also suffered aggravation of any previously existing conditions, incurred medical expenses in the care and treatment of their injuries, suffered physical handicap, lost wages, income lost in the past, and their working abilities and/or earning capacities have been impaired. Plaintiffs injuries and damages are permanent or continuing in nature, and they will suffer these losses and impairments in the future.

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

Maglana V. Celebrity Cruise Inc.
Case No.:

**WHEREFORE,** Plaintiffs and others similarly situated demand judgment for all

damages recoverable under the law against the Defendant and demand trial by jury.

**COUNT VI**
**FAILURE TO PROVIDE MAINTENANCE AND CURE**
*[CLASS & INDIVIDUAL CLAIM]*

82.     Plaintiffs re-allege, incorporate by reference, and adopt paragraphs 1

through 45 above as though originally alleged herein.

83.     Plaintiffs have been injured emotionally and physically over the course of

the last three months as a result of CELEBRITY's intentional discrimination due to their

national origins.

84.     Under the General Maritime Law, Plaintiffs, as seamen, are entitled to m

medical treatment for injuries, ailments or maladies that manifest during the course of their

service on a vessel pursuant to the centuries old mandate that vessel operators assist their

employees return to full strength, or as close thereto as medically possible, for their

shipboard medical conditions they sustained.

85.     They are entitled to recover maintenance and cure from Defendant, their

employer, until they are declared to have achieved Maximum Medical Improvement

(MMI) and/or Maximum Medical Cure (MMC). Maintenance and cure include unearned

wages (regular wages, overtime, vacation pay and tips), which the seamen reasonably

anticipated to earn through the end of the contract or voyage, whichever is longer. In

addition, an MMI declaration must be unequivocal, and if not, any doubts or controversy

regarding whether the seaman is at MMI must be resolved in the seaman's favor.

86.     To date, no medical professional has declared that any Plaintiff has

∘ **31** ∘

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

achieved MMI, and all Plaintiffs are therefore entitled to receive from Defendant medical treatment from physicians of their choice and daily maintenance payments until they a medical professional declares each of them, respectively, at MMI.

87.    At all times material hereto, Defendant willfully and/or callously delayed, failed and/or refused to provide Plaintiffs with their full entitlement to maintenance and cure, and/or Defendant willfully and/or callously delayed, failed and/or refused to provide the Plaintiffs the level of medical treatment and/or maintenance they require to recover from conditions they have acquired either through new injuries or illness, or aggravation of preexisting injuries or maladies, can no longer reasonably support themselves as they convalesce, such that Plaintiffs have become obligated seek the undersigned's legal services and pay the undersigned a reasonable attorney's fee.

88.    At all times material hereto, Defendant's failure to provide Plaintiffs the entire maintenance and cure they are due has been willful, arbitrary, capricious, in violation of the law, and/or in callous disregard for Plaintiffs' right as seamen. As such, Plaintiffs would be entitled to recover their attorneys' fees from Defendant under the General Maritime Law of the United States and potentially punitive damages.

89.    At all times material hereto, Defendant's unreasonable and/or callous failure to pay or provide Plaintiffs with maintenance and cure aggravated Plaintiffs' conditions and caused them to suffer additional compensatory damages, including, but not limited to, the aggravation of their physical condition, disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
www.CRUISELAWYERMIAMI.com

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

of enjoyment of life, feelings of economic insecurity as well as lost earnings or earning

capacity, and medical and hospital expenses in the past and into the future.

**WHEREFORE,** Plaintiffs and others similarly situated demand judgment for all

damages recoverable under the law against the Defendant and demand trial by jury.

<u>COUNT VII</u>
<u>FAILURE TO PROVIDE PROMPT, PROPER & ADEQUATE MEDICAL CARE</u>
[*CLASS & INDIVIDUAL CLAIM*]

90.     Plaintiffs re-allege, incorporate by reference, and adopt paragraphs one (1)

through forty-five (45) above as though originally alleged herein.

91.     At all times material hereto, Defendant had an absolute and non-delegable

duty to provide Plaintiffs with prompt, proper, and adequate medical care.

92.     At all times material hereto, Defendant, through its employees, agents, the

shipboard and/or shoreside physicians and/or nurses, negligently failed to provide

Plaintiffs with prompt, proper, and adequate medical care. Defendant's acts and/or

omissions, as outlined below, caused, contributed and/or played a substantial part in

bringing about Plaintiffs' injuries and damages. Defendant's negligent acts/omissions

include, but were limited to:

a.  Failure to promptly, properly, and adequately diagnose and/or treat
    Plaintiffs' once Defendant became aware of their symptoms and/or
    diagnoses;

b.  Failure to select, retain and/or utilize competent, skilled and properly
    trained medical care providers on board the vessel and shoreside to provide
    Plaintiffs with prompt, proper and adequate medical care;

c.  Failure to utilize proper and adequate medical equipment with which to
    provide Plaintiffs proper and adequate medical care;

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

    d.  Failure to properly medically manage Plaintiffs' medical infirmities and injuries once Defendant became aware of their symptoms and/or diagnoses;

    e.  Failure to timely disembark Plaintiffs to provide them prompt, proper, and adequate medical treatment ashore without delay;

    f.  Defendant's failure to reimburse and/or failure to timely reimburse Plaintiffs for their out-of-pocket medical expenses;

    g.  Defendant failure to authorize and/or failure to provide Plaintiffs with prompt shoreside medical care; and/or

    h.  Defendant prematurely terminating Plaintiffs' medical care before they achieved MMI and/or MMC.

93.    The above acts and/or omissions caused and/or contributed to Plaintiffs and others similarly situated aboard Defendants' vessels to contract COVID-19 and/or other virus and/or medical complications, sustain personal injuries and/or death.

94.    At all times material hereto, Defendant knew or should have known of the foregoing conditions which caused and/or resulted in Plaintiffs' injuries and/or death and did not correct them. In the alternative, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care should have learned of them and corrected them.

95.    As a direct and proximate result of Defendant's acts and/or omissions, as outlined above, Plaintiffs suffered additional pain, disability and/or their recovery was prolonged. In addition, Plaintiffs became more susceptible and/or vulnerable to other illness and/or medical conditions, including pre-existing illness and/or medical conditions, and were injured about their bodies and/or extremities. Plaintiffs also suffered physical pain and suffering, mental anguish, future physical and medical problems, loss of the joy of life, and suffered physical and/or functional disability,

DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654
WWW.CRUISELAWYERMIAMI.COM

MAGLANA V. CELEBRITY CRUISE INC.
CASE NO.:

physical and/or functional impairment. Plaintiffs were also inconvenienced in the normal pursuits and pleasures of life and suffered from feelings of economic insecurity caused by disability, disfigurement. Plaintiffs also suffered aggravation of any previously existing conditions as a result of Defendant's actions, incurred medical expenses in the care and treatment of their injuries, suffered physical handicap, lost wages, income lost in the past, and their working abilities and/or earning capacities have been impaired.. Plaintiffs injuries and damages are permanent or continuing in nature, and they will suffer these losses and impairments in the future.

96.     This Count is alleged separately from Jones Act negligence asserted above pursuant to *Joyce v. Atlantic Richfield Company*, 651 F. 2d 676 (10th Cir. 1981), which states, in part, "Negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief [for which separate damages are awardable]."

**WHEREFORE,** Plaintiffs and others similarly situated demand judgment for all damages recoverable under the law against the Defendant and demand trial by jury.

<u>**COUNT VIII**</u>
<u>**WAGES AND PENALTIES PURSUANT TO 46 U.S.C. § 10313**</u>
*[CLASS & INDIVIDUAL CLAIM]*

97.     Plaintiffs re-allege, incorporate by reference, and adopt paragraphs one (1) through forty-five (45) above as though originally alleged herein.

98.     At all times material hereto, Plaintiffs were employed as a seaman in the service of the vessel.

99.     While in the service of the ship, Plaintiffs performed all the work required

**DELGADO TRIAL ATTORNEYS ✦ 10661 N. KENDALL DRIVE, SUITE 210 ✦ MIAMI, FL 33176**
**(305) 596-7911 ✦ (305) 927-3678 ✦ TOLL FREE (877) 372-0817 ✦ FAX (305) 397-2654**
**WWW.CRUISELAWYERMIAMI.COM**

Maglana V. Celebrity Cruise Inc.
Case No.:

of them, and carried out the orders given their superiors.

100.    Plaintiffs were discharged without any just or sufficient cause. At the time of Plaintiffs' discharge, the vessel was, and remains in, a port of the United States.

101.    At the time of Plaintiffs discharge, Defendant did not pay Plaintiff all of their earned wages, including reimbursement of deductions previously made of Plaintiffs' wages. Defendant has sole custody and control of Plaintiffs wage records and personnel files. These documents are needed by Plaintiff to review to show exact dates and amounts with respect to earned wages owing to Plaintiff and deductions made from such earned wages.

102.    At the time of Plaintiffs' discharge, Plaintiff demanded all their wages, including reimbursement of deductions made from Plaintiff s earned wages.

103.    Defendant refused to pay Plaintiffs all their earned wages or reimburse Plaintiffs for the deductions made there from, without sufficient cause.

104.   Under 46 U.S.C.A. Section 10313, Plaintiff is entitled to his earned wages, deductions, and two days wages for each day payment is delayed.

WHEREFORE, Plaintiff demands all damages entitled to by law, attorney's fees, prejudgment and post-judgment interest, costs and demands jury trial of all issues so triable.

# [ SPACE LEFT BLANK INTENTIONALLY]

Delgado Trial Attorneys ✦ 10661 N. Kendall Drive, Suite 210 ✦ Miami, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ Toll Free (877) 372-0817 ✦ Fax (305) 397-2654
www.CruiseLawyerMiami.com

Maglana V. Celebrity Cruise Inc.
Case No.:

Respectfully submitted this on this 21st day of MAY, 2020.

BY:    _____
       Raul G. Delgado II, Esq.
       Florida Bar No. 094004
       raul@cruiselawyermiami.com
       Raulsr@cruiselawyermiami.com
       heidi@cruiselawyermiami.com
       filing@cruiselawyermiami.com
       Delgado Trial Attorneys
       *Attorneys for Plaintiff*
       10661 N. Kendall Drive, Suite 210
       Miami, FL 33176
       Ph:          (305) 596-7911
       Cell:        (305) 972-0817
       Fax:         (305) 397-2654
       Toll Free:   1(877) 372-0817

Delgado Trial Attorneys ✦ 10661 N. Kendall Drive, Suite 210 ✦ Miami, FL 33176
(305) 596-7911 ✦ (305) 927-3678 ✦ Toll Free (877) 372-0817 ✦ Fax (305) 397-2654
www.CruiseLawyerMiami.com