UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:20-cv-22133-JEM

RYAN MAUNES MAGLANA, *on his own behalf and as a class representative of all other similarly situated Filipino crewmembers trapped aboard* CELEBRITY *cruise vessels*,

 Plaintiffs,

v

CELEBRITY CRUISES INC.,

 Defendant.
_____/

**CLASS ACTION & DEMAND FOR JURY TRIAL**

**PLAINTIFFS' NOTICE OF COMPLIANCE WITH D.E. 12 AND RESPONSE IN OPPOSITION TO DEFENDANT'S SUGGESTION OF MOOTNESS [D.E. 10]**

 Plaintiff, RYAN MAUNES MAGLANA, on his own behalf and on behalf of all other similarly situated Filipino crewmembers trapped onboard CELEBRITY cruise vessels (hereinafter "PLAINTIFFS") through undersigned counsel hereby file their Notice of Compliance with D.E. 12 & their Response in Opposition to Defendant's "Suggestion of Mootness" [D.E. 10] and offer the following in support of their position:

 1. Plaintiff MAGLANA, on his own behalf and as a class representative of all other similarly situated Filipino crewmembers trapped aboard CELEBRITY cruise vessels, filed the instant action of May 21, 2020.

 2. Count I of their Complaint includes a prayer for injunctive and equitable

relief, to wit:

    a. A mandatory injunction requiring Defendant to repatriate its approximately 1700 FILIPINO seafarers; and

    b. Back/Front pay and all other equitable relief which Plaintiffs are entitled to.

3. To date, some Filipino seafarers in Defendant's fleet have been repatriated. However, over 70% were still held captive onboard ships in Defendant's fleet at the time Defendant filed its Suggestion of Mootness, and as of the time the instant response is submitted to the Court, there are still over 1000 Filipino seafarers and class members that are being held against their will by Defendant.

4. By way of background, after the instant action was filed on May 21, 2020, the Miami Herald reported on the Plaintiffs' claims in an article which appeared on May 22, 2020. As indicated in the Herald's article, Defendant was contacted for comment on the lawsuit by the time the story was published on the 22nd, but the company declined to comment.

5. Also, on the 22nd, the Defendant contacted the undersigned's former employer to discuss the claims asserted herein but they were advised that the undersigned and the former employer were no longer professionally affiliated.

6. The following day, on May 23rd, the undersigned was in direct contact with the Defendant's inhouse attorneys upon whom process was served per Fed. R. Civ. P. 4. See D.E. 14.

7. Defendant also purchased Plaintiff MAGLANA'S ticket home on May 23, nearly 48 hours after the instant action was filed which is attached and marked as Exhibit "A".

8. It is undisputed that Plaintiff MAGLANA was repatriated to the Philippines on May 26, 2020, on a ticket that was issued on May 23rd. According to the US Center for Disease Control and Prevention (hereinafter "CDC"), Celebrity did not submit their CDC attestation form until May 22nd, after the instant action had commenced. Approved CDC cruise ship crewmember disembarkations is attached and marked as Plaintiffs' Exhibit "B".

9. As it stands currently, that is the only matter from Defendant's *Suggestion of Mootness* that is not in dispute.

10. According to a leaked internal memorandum that was published in early May, RCL International, the parent corporation of both Royal Caribbean Cruise Lines and Celebrity Cruise Lines, had more than 6,689 Filipino seafarers waiting to be repatriated as of May 7, 2020. See Exhibit "C" at p. 19

11. Celebrity did not repatriate a single Filipino crewmember after the CDC's March 14th, 2020 No-Sail Order for **over 68 days** as evident in the CDC's publication in Exhibit "B".

12. In fact, Celebrity failed to repatriate a single Filipino seafarer until **May 20th, 2020.** Id.

13. The CDC approved crewmember repatriation through US ports on April 23, 2020, and yet for 27 days, Celebrity declined to follow the procedures and instead, elected to shift blame to the CDC for "preventing" repatriation.

14. At the time the instant action was filed, 1528 of the approximately 1700 Filipino crewmembers were still onboard the ships in Celebrity's fleet with no end to their forced captivity in sight.

15. What Defendant apparently contends is a random coincidence, the day after this action was commenced and the local media reported on the story, Celebrity repatriated an additional 320 Filipino crewmembers by pure happenstance.

16. Even assuming *arguendo* that Defendant's claim that "wholly independent of this action", Defendant requested clearance from the CDC to repatriate an additional 320 Filipino seafarers within 24 hours of the commencement of this action, almost double the amount that had been requested prior to the commencement of this action.

17. Plaintiff, apparently by virtue of a mere coincidence, just so happened to be among the 320 Filipino seafarers repatriated to the Philippines "*wholly independent of this action*".

18. Defendant filed its Suggestion of Mootness at May 27, 2020. At that time, there were still at least 1200 Filipino seafarers waiting to be repatriated, or over 70% of the Filipino seafarers in Celebrity's fleet.

19. Defendant repatriated an additional 194 Filipino seafarers on June 1st, 2020 leaving a balance of just over 1000 Filipino seafarers still held captive onboard ships in

its fleet.

20. Plaintiffs respectfully submit that this controversy is far from moot as the fate of over 1000 souls remain in limbo while being held captive onboard Defendant's vessels.

21. In addition, Plaintiffs' prayer for back pay continues to remain in controversy as the Defendant has not paid any of its Filipino seafarers wages since April 24, 2020 other than a $400 bonus paid to some crewmembers as a "good-will gesture" which translates to a *per diem* of just over $13.

22. Accordingly, for the above stated reasons, Plaintiffs submit that this matter is not moot and is ripe for adjudication by this Court.

23. Defendant's voluntary cessation of its unlawful conduct does not render the controversy moot. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000).

24. Furthermore, the claims asserted herein are not arbitrable.  See *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78, 119 S. Ct. 391, 396 (1998).

25. In addition, Plaintiffs' other claims that stem from U.S. statutory law insofar as their claim for wages under 46 U.S.C. Section 10313 "[w]here the parties have agreed that the arbitral body is to decide a defined set of claims which includes [ ] those arising from the application of American [ ] law, the tribunal therefore should be bound to decide that dispute in accord with the national law giving rise to the claim. And so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral

forum, the statute will continue to serve both its remedial and deterrent function. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614, 636-37, 105 S. Ct. 3346, 3359 (1985); see also *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236, 133 S. Ct. 2304, 2310 (2013) ([a]s we have described, *[the effective vindication doctrine's origins stem from]* the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies,' [t]hat would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights."

Dated: 8th day of June 2020.

BY: _____
Raul G. Delgado II, Esq.
Florida Bar No. 094004
raul@cruiselawyermiami.com
Raulsr@cruiselawyermiami.com
heidi@cruiselawyermiami.com
filing@cruiselawyermiami.com
Delgado Trial Attorneys
***Attorneys for Plaintiff***
10631 N. Kendall Drive, Suite 130
Miami, FL 33176
Ph: (305) 596-7911
Cell: (305) 972-0817
Fax: (305) 397-2654
Toll Free: 1(877) 372-0817

**CERTIFICATE OF SERVICE**

**I** HEREBY CERTIFY that a true and correct copy of the foregoing was filed and e-served on Defendant through the Court's CM/ECF system on June 8, 2020.

BY: _____

Maglana V. Celebrity Cruise Inc.
Case No.: 1:20-cv-22133-JEM

Raul G. Delgado II, Esq.
Florida Bar No. 094004
raul@cruiselawyermiami.com
Raulsr@cruiselawyermiami.com
heidi@cruiselawyermiami.com
filing@cruiselawyermiami.com
Delgado Trial Attorneys
*Attorneys for Plaintiff*
10631 N. Kendall Drive, Suite 130
Miami, FL 33176
Ph:             (305) 596-7911
Cell:           (305) 972-0817
Fax:            (305) 397-2654
Toll Free:      1(877) 372-0817